IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-61400

ARTHUR BRADFORD,

    Plaintiff

vs.

I.C. SYSTEM, INC.,

    Defendant.

_____/

**Defendant's Motion to Stay the Case Pending the
*En Banc* Decision in *Hunstein***

GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619

*Attorneys for Defendant*

## I.   Introduction

Plaintiff's primary claims mirror those in *Hunstein v. Preferred Collection and Management Services,* the Defendant made an allegedly improper third-party disclosure by using a letter vendor to send the Plaintiff a dunning letter. Until recently, *Hunstein*[1] delineated (1) that a violation of § 1692c(b) gave rise to a concrete injury in fact under Article III and (2) that a debt collector's transmittal of the consumer's personal information to its dunning vendor constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b). The Eleventh Circuit, however, has now vacated that ruling and granted *en banc* review. A stay in the instant action is therefore appropriate.

## II.   Plaintiff's Claims in the Operative Complaint

Plaintiff filed his Original Complaint on July 8, 2021 alleging that Defendant violated section 1692c(b) of the Fair Debt Collection Practices Act ("FDCPA") and section 559.72(5) of the Florida Consumer Collection Practices Act ("FCCPA") by allegedly disclosing Plaintiff's personal information to a third party. *See*, Doc. 1-4.

On October 13, 2021, Plaintiff filed his First Amended Complaint (the "FAC"). *See*, Doc. 17. Plaintiff's FAC keeps the original claim under section 1692c(b), dropped the FCCPA section 559.72(5) claim, and added a new claim under §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10) of the FDCPA alleging that "Defendant is liable to Plaintiff for attempting to collect the Consumer Debt from

---

[1] On October 28, 2021, the Eleventh Circuit vacated its April 21, 2021, opinion (*Hunstein I*) and substituted a new Opinion (*Huntstein* II).

Plaintiff without possessing a valid consumer collection agency license in accordance with Florida law." *See*, Doc. 17.

With regard to Plaintiff's primary and original claim, under section 1692c(b) of the FDCPA, Plaintiff contends that he incurred a "consumer debt," sometime thereafter fell delinquent, and in attempting to collect the debt, Defendant transmitted Plaintiff's personal information to a third-party, *i.e.*, a letter vendor, who prepared and mailed a letter to the Plaintiff. *Ibid.* at ¶¶ 8, 9, 20 and 21. Plaintiff contends that "Defendant's transmission of Plaintiff's personal information to the Third-Party is an explicit violation of § 1692c(b) of the FDCPA" and cites *Hunstein* to support the claim. *Ibid.* ¶ 27.

### III.     *Hunstein* Background / Procedural History

As summarized succinctly by the Eleventh Circuit, *Hunstein* is a Fair Debt Collection Practices Act claim, 15 U.S.C. § 1692 *et seq.* which involved a situation wherein:

> A debt collector electronically transmitted data concerning a consumer's debt—including his name, his outstanding balance, the fact that his debt resulted from his son's medical treatment, and his son's name—to a third-party vendor. The third-party vendor then used the data to create, print, and mail a "dunning" letter to the consumer. The consumer filed suit alleging that, in sending his personal information to the vendor, the debt collector had violated 15 U.S.C. § 1692c(b), which, with certain exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in connection with the collection of any debt."

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1344 (11th Cir.

2021), *opinion vacated and superseded on reh'g*, No. 19-14434, 2021 WL 4998980 (11th Cir. Oct. 28, 2021).

At the district court level, the court rejected the consumer's reading of § 1692c(b) and dismissed his case. *Hunstein v. Preferred Collection & Mgmt. Services, Inc.*, 2019 WL 5578878, at *2 (M.D. Fla. Oct. 29, 2019), *rev'd and remanded*, 994 F.3d 1341 (11th Cir. 2021). The District Court explained:

> In the instant case, it appears that Hunstein conflates two communications: (1) Preferred's transmission of information to CompuMail for the purpose of generating a letter to Hunstein; and (2) the actual debt collection letter, that was allegedly transmitted from CompuMail to Hunstein. After careful review, the Court finds that Hunstein does not and cannot allege that Preferred attempted to collect Hunstein's debt from CompuMail. Rather, it is the second communication – the letter that Hunstein himself received – that had the objective of motivating someone to pay the debt. The fact that the debt collection letter that CompuMail generated and sent would be considered a "communication in connection with the collection of a debt" does not make the transfer of information to CompuMail a communication in connection with the collection of a debt. It simply makes it a communication with a third party. Consequently, the Court finds that the letter sent from Preferred to the mail house does not violate § 1692c(b).

*Id.*

On appeal, the Eleventh Circuit considered, as a threshold matter, whether a violation of § 1692c(b) gave rise to a concrete injury in fact under Article III, and, on the merits, whether the debt collector's communication with its dunning vendor was "in connection with the collection of any debt." *Hunstein*, 994 F.3d 1341. The Court held (1) that a violation of § 1692c(b) gives rise to a concrete injury in fact under Article III and (2) that the debt collector's transmittal of the consumer's personal

Page | 3

information to its dunning vendor constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b). *Id.*

The *Hunstein* defendant thereafter filed a petition for rehearing *en banc*. Numerous *amicus curiae* briefs were submitted in support of that petition. While the petition was pending, the Supreme Court decided *Ramirez v. TransUnion*, wherein the Supreme Court reconsidered the question of what constitutes an "injury in fact" under Article III, five years after its significant holding in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540. *TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *1 (U.S. June 25, 2021). The Supreme Court held that ***"[o]nly plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court."*** *Id.* (emphasis added). And it reaffirmed that "Article III standing requires a concrete injury even in the context of a statutory violation" and it was not the case that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* In fact, the Supreme Court made clear, "***[a]n injury in law is not an injury in fact***." *Id.*

The *Ramirez* opinion contained an important and relevant footnote addressing the plaintiff's argument that "TransUnion 'published' the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received." *Id.*, 141 S. Ct. 2190, 2210 n. 6. In that footnote, Justice Kavanaugh – writing for the Court -

Page | 4

held that that argument had been forfeited and in any event was "unavailing" because:

> Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications. Moreover, even the plaintiffs' cited cases require evidence that the defendant actually "brought an idea to the perception of another," and thus generally require evidence that the document was actually read and not merely processed. That evidence is lacking here. In short, the ***plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing***.

*Id.* (emphasis supplied).

In October 2021, the Eleventh Circuit reconsidered its *Hunstein* decision, vacated its prior opinion and substituted a new one in its place. *See, Hunstein v. Preferred Collection & Mgmt. Services, Inc.*, 17 F.4th 1016 (11th Cir. 2021) (*Hunstein II*). In a 2-1 decision, the Eleventh Circuit essentially stood by its prior ruling holding that Hunstein had Article III standing since he alleged "an intangible-but-nonetheless-concrete injury, including one resulting from a statutory violation." *Id.* The Court decided that the harm Hunstein alleged was similar in kind to the common-law tort of public disclosure of private facts." *Id.* And that Hunstein's claims—"that the debt collector, [] 'disclosed' what he calls 'sensitive medical information', including his minor son's name and prior medical treatment, to 'the employees of an unauthorized third-party mail house'" amounted to an assertion

Page | 5

that "some measure of disclosure in fact occurred." *Id.* (internal quotations omitted.)

The Eleventh Circuit then examined Hunstein's FDCPA claim—with the lone question being was whether the debt collector's communication with the mail vendor was "in connection with the collection of any debt" and thus implicates § 1692c(b). Relying on the plain language of the statute and dictionary definitions of terms used, the Eleventh Circuit determined that "[i]t seems to us inescapable that [the debt collector's] communication to [the mail vendor] at least 'concerned,' was 'with reference to,' and bore a 'relationship [or] association' to its collection of Hunstein's debt." *Id.* In short, the Eleventh Circuit declared that "Hunstein has alleged a communication 'in connection with the collection of any debt' as that phrase is commonly understood." *Id.*

A few weeks later, on November 17, 2021, the Eleventh Circuit abruptly entered an Order stating: "a majority of the judges of this Court" voted to re-hear *Hunstein en banc*. *See, Hunstein v. Preferred Collection & Mgmt. Services, Inc.*, 17 F.4th 1103, 1104 (11th Cir. 2021).. The Court then vacated Hunstein II. *Id*.

### IV.   Legal Standard

The Court has broad discretion to stay "for good cause shown". Fed. R. Civ. P. 26(c); *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000); *See also, e.g.*, *Pierre's Resort LC v. Interstate Management Co., Inc.*, 2009 WL 395788, *1 (M.D. Fla. 2009). Nearly 75 years ago the United

States Supreme Court recognized the inherent power of district courts "to stay proceedings in one suit until the decision of another" in furtherance of the fair and efficient administration of justice. *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). Justice Cardozo explained "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254.

This court has discretion to grant a stay based on a variety of circumstances pending final resolution of *Hunstein. See, Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.,* 524 F.3d 1235, 1241 (11th Cir.2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances."). "A stay is authorized simply as a means of controlling the district court's docket and managing cases before the district court." *Postel Indus., Inc. v. Abrams Group Const., L.L.C.*, 6:11-CV-1179-ORL-28, 2013 WL 1881560, at *3 (M.D. Fla. 2013), *report and recommendation adopted,* 6:11-CV-1179-ORL-28, 2013 WL 1881556 (M.D. Fla. 2013).

"[A]wait[ing] a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues" in the pending lawsuit is "at least a good [reason], if not an excellent one" to stay an action. *Miccosukee Tribe of Indians of Florida v. S. Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009); *see also, Owens-Benniefield v. Nationstar Mortgage LLC*, 2017 WL 1426720, at *2 (M.D. Fla. Apr. 21, 2017) ("Federal courts routinely exercise their power to stay a proceeding where a pending decision in another court would 'have a substantial or controlling

effect on the claims and issues in the stayed case.'"); *Zia v. CitiMortgage, Inc.*, 2016 WL 1230597, at *2 (S.D. Fla. Mar. 22, 2016). "The parties [in the appellate matter] need not be the same or the issues identical to empower a court to stay a proceeding." *Morrissey v. Subaru of Am., Inc.*, 2015 WL 4512641, at *2 (S.D. Fla. July 24, 2015).

## V.     Argument

1. **This court should stay this case pending a final decision being entered by the *Hunstein en banc* panel.**

A stay of this case is warranted because Defendant otherwise may suffer irreparable injury. A stay will also preserve the parties' and the court's resources insofar as, if the Eleventh Circuit rules in the *Hunstein* defendant's favor or determines Article III jurisdiction is lacking, this case must be dismissed. The court and the parties will therefore benefit from avoiding waste and the expense of significant discovery by tabling the proceedings. Here, as will be demonstrated below, the pertinent factors undoubtedly favor a stay of this case because the forthcoming *en banc* decision will have a controlling effect on any and all *Hunstein* type Article III standing issues, and potentially the merits of this Plaintiff's underlying FDCPA claim(s).

To be sure, a court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Where "a federal appellate decision ... is likely to have substantial or controlling effect on the claims and issues,"

a stay may be warranted. *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1197 (11th Cir. 2009). "The proponent of a stay bears the burden of establishing its need," *Jones*, 520 U.S. at 708, and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Landis*, 299 U.S. at 255.

In evaluating a stay request, courts are to consider four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) whether issuance of the stay will substantially injure other interested parties; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (punctuation omitted). The first two factors of the traditional standard are the most critical: the applicant must show "more than the mere possibility" that it will succeed on the merits *or* that it will suffer irreparable injury if the stay is not granted. *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019).

The fact that a rehearing *en banc* has been granted shows the magnitude of the issues before the Eleventh Circuit in *Hunstein*. For instance, Federal Rule of Appellate Procedure 35 indicates this significance as it states:

> [a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered unless (1) en banc consideration is necessary to secure and maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance.

Fed. R. App. P. 35(a).

Similarly, the Eleventh Circuit Local Rule echoes:

> A petition for en banc consideration, whether upon initial hearing or rehearing, is an extraordinary procedure intended to bring to the attention of the entire court a precedent-setting error of exceptional importance in an appeal or other proceeding, and with specific reference to a petition for en banc consideration upon rehearing, is intended to bring to the attention of the entire court a panel opinion that is allegedly in direct conflict with a precedent of the Supreme Court or of this circuit. Alleged errors in a panel's determination of state law, or in the facts of the case (including sufficiency of the evidence), or error asserted in the panel's misapplication of the correct precedent to the facts of the case, are matters for rehearing before the panel but not for en banc consideration.

11th Cir. R. 35-3.

To be sure, *Hunstein I* sent shockwaves through the debt collection industry. And *Hunstein II* did nothing but further muddy the waters given Judge Tjoflat's stinging dissent. The Eleventh Circuit though—apparently recognizing the gravity of the issues present in *Hunstein*—took the usual step of *sua sponte* issuing an Order vacating *Hunstein II* in favor of an *en banc* review if the case.

If a stay isn't granted here, Defendant will suffer irreparable harm. One such harm Defendant would face is being required to expend valuable resources (time and money) to defend itself in a case where its defense might ultimately end up pointless—should the *en banc* panel rule contrary to the vacated decision(s). Initially, the *en banc* panel will need to tackle the question of Article III standing. The vacated *Hunstein II* ruling showed a divided panel vigorously defending their positions on Article III jurisdictional standing. This "standing" debate stemmed, in part, from the

Supreme Court's decision last June in *TransUnion LLC v. Ramirez,* wherein the Supreme Court revisited the issue of what constitutes an "injury in fact" under Article III—five years after its significant holding in *Spokeo, Inc. v. Robins*. *See, TransUnion*, 141 S. Ct. 2190 (2021).

Judge Tjoflat in fact changed his opinion in *Hunstein II* based - at least in part - on Footnote 6 in *TransUnion* directly referencing mail vendors and intra-company disclosures in the Article III context:

> For the first time in this Court, the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is forfeited. In any event, it is unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications. Moreover, even the plaintiffs' cited cases require evidence that the defendant actually "brought an idea to the perception of another," and thus generally require evidence that the document was actually read and not merely processed . . . That evidence is lacking here. In short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing.

*TransUnion*, 141 S. Ct. at 2210, fn. 6.

This footnote at least suggests that the use of a mail vendor does not qualify as a disclosure. And it is worth noting that the Supreme Court specifically identified mail vendors—the type of third-parties allegedly involved here—while addressing

examples of internal "publications." While the quoted language from *Ramirez* is dicta, the majority in *Hunstein II* acknowledged that "there is dicta and then there is Supreme Court dicta." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, No. 19-14434, 2021 WL 4998980, at *10 (11th Cir. Oct. 28, 2021), *reh'g en banc granted*, No. 19-14434, 2021 WL 5353154 (11th Cir. Nov. 17, 2021) citing *United States v. Watkins*, 10 F.4th 1179, 1182 (11th Cir. 2021) (en banc) (quotation marks omitted). Yet found that the "Supreme Court dicta" in TransUnion "doesn't control here." *Id*. So, the *en banc* panel now must determine—with *Ramirez* in mind—whether the *Hunstein* plaintiff alleged facts supporting the existence of a concrete injury that imbues federal courts with the power to hear *Hunstein*-type claims.

And *if* the Court finds standing, it will then need to address whether the debt collector's transmission of certain data to a vendor states a viable cause of action under § 1692c(b). Interestingly, it appears that the Consumer Financial Protection Bureau (CFPB), the agency with oversight authority on the debt collection industry, may have been caught off guard by the holding.

The CFPB implemented its long-awaited Regulation F on November 21, 2021. *See,* 12 CFR Part 1006. In 2016, the CFPB issued the results of a study it completed on the debt collection industry. *See,* https://files.consumerfinance.gov/f/documents/20160727_cfpb_Third_Party_Debt_Collection_Operations_Study.pdf. According to the study, "most" of the debt collectors that participated in the study "used an outside vendor for sending written

communications." *Ibid.* Yet the CFPB hasn't implemented a rule as part of Regulation F prohibiting the practice of using letter vendors. One comment in fact expressly contemplates debt collectors using mail vendors, stating:

> a debt collector may disclose a vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information. As one commenter observed, some debt collectors may use a vendor to receive mail from consumers.

https://www.federalregister.gov/d/2020-28422/p-492

This allowance is at odds with the idea that using a mail vendor violates the Act.

Should this case proceed and the Eleventh Circuit rule during its pendency in a manner that requires dismissal, any money spent by the Defendant defending the case will be lost and will have been economic waste. And, if the case isn't stayed, Defendant will be put in a "rock and a hard place" situation by being forced to litigate the case or settle for what would likely be an amount less that defense costs in the short-term.

District Judge Roy K. Altman highlighted the waste of judicial resources that occur in situations in an order staying a so-called *Hunstein* case, stating:

> the equities in this case—in particular, the need to promote judicial economy—strongly favor a stay. . . . Take, for example, the two hypotheticals laid out above. If this Court were to find that the Plaintiff here has established her TCPA standing—and if, after that ruling, Cordoba came out the other way—the Defendant would undoubtedly (and justifiably) move the Court to reconsider its decision, a motion that might come in only after the conclusion of a trial on the merits of this case. On the

> other hand, if this Court were to conclude that the Plaintiff here lacks standing, the Plaintiff would almost certainly appeal the Court's order entering judgment for the Defendant. And if, in this scenario, Cordoba were to suggest that the Plaintiff here had established her standing under the TCPA, the Eleventh Circuit would be required to reverse this Court's decision and remand the case—now months or years later—so that the Court and the parties could, as it were, do it all over again. The Court agrees with the Plaintiff that waiting a few months for the Eleventh Circuit's guidance is a small price to pay to avoid this needless parade of horribles.

*Davis v. Post Univ., Inc.*, 2019 WL 9048995, at *2 (S.D. Fla. Nov. 7, 2019).

District Court Judge Anne C. Conway in *Ruales v. Client Services, Inc*, Judge Anne C. Conway likewise entered an order staying the case based on the rehearing en banc in *Hunstein*, holding:

> The Eleventh Circuit Court of Appeals' resolution of the petition for rehearing en banc in Hunstein, will have a substantial impact on the claims in this case, most notably, on the issue of standing for the statutory violation. In the interest of justice and judicial economy, the Court will stay this action until the Eleventh Circuit's resolution of the rehearing petition in Hunstein

*Ruales v. Client Services, Inc*, Case No. 6:21-cv-1828 (M.D. Fla. Nov. 30, 2021) (courtesy copy attached).

As detailed *supra,* the Eleventh Circuit has held that when a court's subject matter jurisdiction is in question—like it is here--and a highly relevant matter is the subject of a rehearing *en banc*--like it is here--a stay is proper. The Court echoed this sentiment in *Miccosukee Tribe of Indians of Fla.v. S. Fla. Water Mgmt. Dist.*, stating:

> In this case… the reason for the district court's stay was at least a good one, if not an excellent one: to await a federal appellate decision that is likely to have a substantial or

Page | 14

> controlling effect on the claims and issues in the stayed case.

*Id.,* 559 F.3d 1191, 1197.

This same approach was followed by the court in *Fridman v. Collection LLC,* 2018 WL 2254570 (S.D. Fla. Mar. 24, 2018) (J. Ungaro). There a plaintiff alleged a defendant violated the TCPA by sending a single text message to the plaintiff's cellular telephone. *Id.* The defendant moved for a stay because the Eleventh Circuit was considering the same question—whether a plaintiff has Article III standing under the TCPA after receiving a single text message in *Salcedo v. Hanna*. *Id.* Judge Ungaro issued a stay, holding: "Resolution of that appeal will determine whether Plaintiff here has standing to pursue his claim." *Id.*

Likewise, in *Ring v. City of Gulfport,* Judge Hernandez Covington—in ruling on a motion to stay—decreed that "[t]he Eleventh Circuit has approved of stays pending appellate resolution of a related case, especially where the related matter is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Id.,* 2020 WL 3895435, at *4 (M.D. Fla. July 10, 2020) (*citing*, *Miccosukee Tribe*).

A stay of the litigation is warranted in this case pending the final disposition of the *Hunstein en banc* review because the decision will have a substantial or controlling effect on the claims presented in this case. Thus, this court should find that it's not only in the parties' and court's interest to grant a stay here, but in the public's as well. *Hunstein* will likely establish precedent on Article III jurisdiction in similar cases. It therefore makes little sense to allocate the court's scare resources to furthering a case

that it may have no power to do so.

## VI.   Conclusion

*Hunstein* has been vacated. The forthcoming *en banc* panel rehearing will almost certainly determine whether a *Hunstein*-type plaintiff has Article III jurisdictional standing. And the Court could also rule on whether sending information to a third-party vendor is "communication" subject to § 1692c(b). It therefore makes good sense to conserve the resources of this court, as well as the parties, by staying this case pending resolution of the *en banc* review in *Hunstein*.

### Good Faith Conference Certification

Defendant hereby certifies that it conferred with Plaintiff prior to filing the instant motion, and Plaintiff has advised that the relief sought herein is opposed.

Respectfully submitted by:

/s/ Joseph C. Proulx
JOSEPH C. PROULX, ESQ.
Florida Bar No.: 0056830
jproulx@gsgfirm.com
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
dgolden@gsgfirm.com
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
Fax: (813) 251-3675
*Counsel for Defendant*